**ARBOR FOODS, INC., Plaintiff,**

v.

**UNITED STATES, et al., Defendants.**

**Court No. 84–12–01722.**

United States Court of
International Trade.

Dec. 11, 1984.

**218**

Graubard, Moskovitz & McCauley, Washington, D.C. (Alfred R. McCauley, Washington, D.C., on the motion); Dykema, Gossett, Spencer, Goodnow & Trigg, Washington, D.C. (Norton Cutler, Washington, D.C., on the motion), for plaintiff.

Richard K. Willard, Acting Asst. Atty. Gen., Joseph I. Liebman, Atty. in Charge, Commercial Litigation Branch, Washington, D.C. (Michael P. Maxwell and Veronica A. Perry, New York City, on the cross-motion); (Karen Binder and Beth Brothman, Chief Counsel, Intern. Trade Litigation, United States Customs Service, of counsel on the memorandum), for defendants.

*Memorandum Opinion on Plaintiff's Motion for a Preliminary Injunction*

CARMAN, Judge.

This matter is before me on plaintiff's motion for a preliminary injunction and defendants' cross-motion to dismiss. The issues presented by these motions include whether this Court has jurisdiction over the subject matter pursuant to 28 U.S.C. § 1581(i)(3), (4) (1982), and, if jurisdiction does exist, whether the elements necessary for a preliminary injunction are present.

Plaintiff, an importer of sugar blends, seeks a preliminary injunction restraining the United States Customs Service (Customs) from requiring the segregation of the contents of blends of sugar containing 65 percent or less sugar by dry weight and subjecting the sugar to quota provisions.

After hearing argument on December 7, 1984, the Court denied plaintiff's application for a temporary restraining order. At the hearing for the preliminary injunction on December 11, 1984, the Court received evidence which was offered to establish irreparable injury. The evidence was relevant to whether the Court should exercise jurisdiction pursuant to 28 U.S.C. § 1581(i) as well as to whether plaintiff was entitled to preliminary injunctive relief. Ruling from the bench, the Court denied the motion for a preliminary injunction and granted defendant's cross-motion to dismiss declining to obviate the usual procedure of administrative protest that would occur by exercising jurisdiction under section 1581(i).

### FACTS

Since December, 1981, the President has issued a number of proclamations establishing import fees and quotas on imported sugar.[1] The proclamations implemented a price support system for domestic sugar cane and sugar beets as required by Title IX of the Agriculture and Food Act of 1981, 7 U.S.C. § 1446(h) (1982). Specifically relevant to the current controversy are Proclamation 4941, issued May 5, 1982, and Proclamation 5071, issued June 28, 1983. Proclamation 4941 imposed quotas on imports of sugars classified under TSUS items 155.20 and 155.30, effectively foreclosing all importations of pure sugar. Proclamation 5071 extended the quotas to sirup and sugar blends classifiable under items 183.05, 183.01, 156.45, and 155.75 of the TSUS and containing over 65 percent sugar by dry weight.

---

**1.** Explaining that the Secretary of Agriculture determined that sugars were being imported "in such quantities as to render or tend to render ineffective, or to materially interfere. with the price support operations," Presidential Proclamation No. 4887, 46 Fed.Reg. 62,641 (1981), imposed import fees on all imports of sugars. Proclamation No. 4940, 47 Fed.Reg. 19,657 (1982), substantially increased the import fees imposed by Proclamation No. 4887. Proclamation No. 4941, 47 Fed.Reg. 19,661 (1982), imposed quotas on imports of sugars classified under TSUS items 155.20 and 155.30. Proclamation No. 5071, 48 Fed.Reg. 30,089 (1983), extended quotas to blended sugars classified under TSUS items 183.05, 183.01, 156.45 and 155.-75.

During the period in which these proclamations were issued, the plaintiff imported products that were blends of sugar and other ingredients such as flour, dry dextrose, milk powder, and dry corn sirup solids.

To avoid subjection of its products to the quotas, the plaintiff began altering the mixture of certain blends in July of 1983 to ensure that they contained 65 percent or less sugar. Sometime in 1983 the plaintiff had also added a final step to its manufacturing process by screening blends immediately following entry of the merchandise and purveying the sifted sugar as a blend containing approximately 95 percent sugar. Plaintiff brought pure sugar from Canada into a foreign trade zone located within its warehouse in Toledo, Ohio. After mixing sugar and corn sirup solids in the foreign trade zone, the blend was entered into the Customs Territory of the United States. Once across the zone, the merchandise was immediately screened to separate the sugar from the corn sirup solids. The plaintiff has stated that the Customs Port Director was advised of the screening operation and he "subsequently permitted entry of 24,950 tons [of blends] which he knew Arbor [plaintiff] would screen and indeed probably saw Arbor screening." Affidavit of Clark Bien, at 3.

Exactly when Customs became aware of the screening practice is unclear. On November 6, 1984, the Office of Regulations and Rulings advised Customs officials by telex of the practice and directed that, henceforth, all "purported sucrose 'blends' will be considered commingled merchandise, pursuant to general headnote 7, TSUS," except those blends that "possess a valid commercial identity and which are actually used in commerce in the United States."

Subsequent to the November 6 directive, Customs denied entry of 360 tons of sugar and corn sirup solids blend from the foreign trade zone in plaintiff's Toledo ware-house.[2] The plaintiff filed no protest, but met with Customs officials on November 16, 1984, and requested a grace period to permit it to change its business practice to conform to the November 6 directive. The request was submitted in letter form on November 21, 1984, and denied by Customs on November 28, 1984. On November 14, 1984, Customs revoked all classification rulings issued prior to November 6, 1984, covering various sugar blends of plaintiff. The specific sugar/corn sirup solids blend at issue here has never been covered by a ruling issued to the plaintiff.

## OPINION

■ The threshold question presented by this action is whether this Court has subject-matter jurisdiction under 28 U.S.C. § 1581(i)(3), (4), notwithstanding that plaintiff has failed to avail itself of the administrative protest mechanism. Generally speaking, the United States Court of International Trade reviews "challenges to classification, valuation and entry of merchandise ... pursuant to 28 U.S.C. § 1581(a) after the administrative remedies under 19 U.S.C. § 1514 and § 1515 have been exhausted." *Mast Industries, Inc. v. Regan*, 8 CIT ——, at ——, 596 F.Supp. 1567, at 1573 (1984). This Court, however, has on occasion asserted subject matter jurisdiction under 28 U.S.C. § 1581(i) in the absence of a denied protest. For example, in *United States Cane Sugar Refiners' Association v. Block*, 3 CIT 196, 544 F.Supp. 883, *aff'd*, 683 F.2d 399, 69 C.C.P.A. 172, (1982), a case involving quantitative restrictions on sugar imports, the Court held that subject matter jurisdiction existed under section 1581(i). There, Judge (now Senior Judge) Newman found that to require the filing and denial of a protest would be tantamount to "insistence [on] a useless formality," since Customs officials would be powerless to vary from the challenged Presidential Proclamation. 3 CIT at 201, 544 F.Supp. at 887. The Court of Customs and Patent Appeals

---

**2.** Neither party has specified in its pleadings exactly when the importation was attempted and denied.

(now the Court of Appeals for the Federal Circuit) upheld this assertion of jurisdiction, adding:

> Respecting jurisdiction under § 1581(i), we note the provision of injunctive powers to the Court of International Trade in the Customs Courts Act of 1980 and the special circumstances of this case which, absent that provision, would have required Association to present its case to the District Court. We are persuaded that in this case, involving the potential for immediate injury and irreparable harm to an industry and a substantial impact on the national economy, the delay inherent in proceeding under § 1581(a) makes relief under that provision manifestly inadequate and, accordingly, the court has jurisdiction in this case under § 1581(i).

683 F.2d at 402 n. 5, 69 C.C.P.A. at 175 n. 5; *see also American Association of Exporters & Importers—Textile & Apparel Group v. United States*, 7 CIT ——, 583 F.Supp. 591, 597 (1984), *appeal docketed*, 751 F.2d 1239 (Fed.Cir.1984).

■ This case, however, does not present appropriate circumstances for dispensing with access to this Court through the traditional avenues contained in 28 U.S.C. § 1581(a)–(h). Plaintiff's presentation, including evidence adduced at the hearing on the preliminary injunction, is not sufficient to persuade the Court that it should exercise subject-matter jurisdiction under section 1581(i)(3), (4). Nor has there been an adequate showing of irreparable harm or other special circumstances to justify avoiding the usual protest procedure provided by Congress. The plaintiff's proper avenue of recourse is by way of administrative protest pursuant to 19 U.S.C. §§ 1514 and 1515. *See United States v. Uniroyal, Inc.*, 687 F.2d 467, 472, 69 C.C.P.A. 179, 183–84 (1982).

■ Although, in light of the above, it is not necessary to reach the questions presented in plaintiff's motion for a preliminary injunction, the Court nevertheless wishes to point out that plaintiff has not made a sufficient showing of harm in any event.

Plaintiff alleges injury in the forms of lost sales, lost benefits from past marketing, injury to its reputation as a reliable supplier, and the costs required for developing new products. Plaintiff also avers that it was forced to lay off 75 to 80 employees at its Toledo, Ohio plant and that plaintiff may be forced out of business altogether as a result of the actions of Customs. Plaintiff continues to hold the 360 tons of excluded blend in inventory and is also paying $600 per day demurrage on twelve railcars of sugar awaiting processing.

The exact nature of plaintiff's lost profits is, nevertheless, unknown. Its alleged injuries of lost benefits from past marketing and damage to reputation are not unlike those injuries alleged in *Manufacture de Machines du Haut-Rhin v. Von Raab*, 6 CIT ——, 569 F.Supp. 877, 881, *appeal dismissed*, No. 83–1341 (Fed.Cir. Dec. 29, 1983), which the court found to have been highly speculative.

Furthermore, expeditious administrative review is assured under 19 C.F.R. § 174.21(b) (1983), which requires that the district director act on the protest within 30 days of filing. The Court perceives no reason why the plaintiff's remedy of filing an administrative protest and seeking judicial review, should it be required, is inadequate. Had the plaintiff timely filed its protest and sought administrative review in the first place, it would now be in a position to seek judicial review if required.

## CONCLUSION

For the foregoing reasons, the Court declines to exercise its subject-matter jurisdiction in this case. Given this determination, the defendants' cross-motion to dismiss must be, and hereby is, granted.