**MILIN INDUSTRIES, INC., Plaintiff,**

v.

**UNITED STATES, Defendant.**

**Court No. 87–10–01053.**

United States Court of International Trade.

July 21, 1988.

John R. Bolton, Asst. Atty. Gen., Washington, D.C., Joseph I. Liebman, Atty. in Charge, Intern. Trade Field Office, Commercial Litigation Branch, U.S. Dept. of Justice, Mark S. Sochaczewsky, New York City, for defendant.

Maciorowski & Graf, P.C., (Edmund Maciorowski), Detroit, Mich., for plaintiff.

DiCARLO, Judge:

The United States (defendant) moves pursuant to Rule 12(b) of the Rules of this Court to dismiss for lack of jurisdiction and because the complaint fails to state a claim upon which the Court may grant relief. Defendant's motion to dismiss requires the Court to characterize an act of the United States Customs Service (Customs) in not allowing merchandise from Pakistan invoiced as "rags" into the commerce of the United States. If Customs' action was an "exclusion," as the importer claims, jurisdiction would lie with this Court under 28 U.S.C. § 1581(a) (1982) because Customs denied an importer's protest against the exclusion of merchandise, or under 28 U.S. C. § 1581(i)(3) or (4) (1982) because this dispute concerns a quantitative restriction on goods for reasons other than the protection of public health and safety. If Customs' action was a "seizure," as defendant claims, jurisdiction would lie with the United States District Court for the Eastern District of Michigan under 28 U.S.C. § 1356 (1982).

The Court finds the that merchandise entered on June 23, 1987 was excluded and not seized until June 29, 1987, and that the importer protested this exclusion. The Court holds that the importer has properly invoked this Court's jurisdiction under 28 U.S.C. § 1581(a) (1982) following Custom's denial of the importer's protest.

### Background

Plaintiff describes the merchandise involved as cotton terry rags imported from

Pakistan in June of 1987, and states that the issue is the correct classification of these articles under the Tariff Schedules of the United States (TSUS) in order to determine their correct quota category. Customs' Detroit District Office refused to admit the merchandise into the commerce of the United States and seized it on June 29, 1987 pursuant to 19 U.S.C. § 1592(c) for plaintiff's alleged failure to present proper visas for the merchandise under quota categories 363 or 369. Customs' visa requirement depends upon classification of the merchandise under item 366.19, TSUS. Plaintiff claims the merchandise is properly classifiable under items 390.30 or 386.25, TSUS, and thus not subject to quantitative restrictions, or item 382.25, TSUS, and subject to quantitative restrictions under quota category 369.

Plaintiff filed a protest numbered 3801–7–001403 on August 6, 1987, which Customs denied. Following Customs' denial of the protest, plaintiff filed a complaint in this Court on March 29, 1988 and moved for an order to show cause why this action should not proceed to trial.

At a telephone conference on May 24, 1988, the Court granted plaintiff leave to file an amended complaint to add 28 U.S.C. § 1581(i) (1982) as a basis of jurisdiction. The Court ordered expeditious discovery on the issue of jurisdiction, as well as discovery on the classification issues to allow for the possibility that the trial would proceed.

### Discussion

Under 28 U.S.C. § 1581(a) (1982), the Court of International Trade has exclusive jurisdiction of any civil action commenced to contest the denial of a protest, in whole or in part, under section 515 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1515 (1982), which in turn refers to protests of decisions listed in 19 U.S.C. § 1514 (1982 & Supp. IV 1986), which includes "the *exclusion* of merchandise from entry or delivery or a demand for redelivery to customs custody under any provision of the customs laws," 19 U.S.C. § 1514(a)(4).

Plaintiff cites ten facts as encompassing a protestable exclusion and/or refusal to

deliver under 19 U.S.C. § 1514(a)(4) (1982). Schedule B–1, *Plaintiffs' Final Memorandum in Opposition to Defendant's Motion to Dismiss.*

1. On June 23, 1987, plaintiff's customhouse broker filed entry No. 1761–6 including the subject merchandise. Customs refused to process the entry and release the articles to the importer.

2. On June 24, plaintiff apprised Customs of an arguable discrepancy in the invoice description for the articles. *See* 19 U.S.C. § 1592(c)(4) (1982). Customs refused to acknowledge this disclosure. Defendant states that Customs did not receive this letter until after an initial examination of the merchandise. Defendant's Reply Memorandum, Affidavit of Mary Latiker, ¶ 8.

3. Customs violated its regulations regarding the rejection of entry documents found to be incorrect. Defendant counters plaintiff's claims that Customs violated its own regulations by stating that 19 C.F.R. §§ 152.2 and 152.3 only apply where Customs makes a protestable classification or appraisement decision, and there was no liquidation of "the towels in the shipment" because they were not invoiced.

4. On June 24, Customs prepared a non-release entry form 1X–DD–38–46 ordering a "hold" on the articles and refused to issue a permit for their release. The hold and refusal to issue a permit encompass a protestable exclusion and/or refusal to deliver.

5. On June 26, plaintiff's customhouse broker sought delivery of the products to a bonded warehouse facility for inspection through the substitution of a warehouse entry [in accordance with 19 C.F.R. § 144.16]. Customs denied this request for substitution.

6. On June 29, a Customs inspector noted a classification and visa requirement on the non-release entry form. Customs refused to issue a permit for delivery and chose to seize the merchandise.

7. On June 29, the merchandise was seized under 19 U.S.C. § 1592(c) on the

basis of an invoice misdescription, a reclassification of the articles, and the failure to provide appropriate visas under the new classification.

8. The alleged "advisory" classification of the imported merchandise was directly related to the decision to "hold" this shipment from delivery.

9. Customs performed an inventory which reflected that at least part of the shipment was properly invoiced as rags. This portion of the merchandise has not yet been released.

10. Customs' alleged refusal to classify the imports precludes the importer from obtaining necessary visas to follow mitigation procedures.

Plaintiff makes alternative claims for each of the ten facts that Customs' actions are contrary to law and arise out of the administration and enforcement of a quantitative restriction on imported goods to accordingly confer jurisdiction under 28 U.S.C. § 1581(i)(3) and (4) (1982). Under 28 U.S.C. § 1581(i), the Court of International Trade is granted exclusive jurisdiction of any civil action commenced against the United States that arises out of any law of the United States that provides for

(3) embargoes or other quantitative restrictions on the importation of merchandise for reasons other than the protection of the public health or safety; or

(4) administration and enforcement with respect to matters referred to in paragraphs (1)-(3) of [28 U.S.C. § 1581(i)] and subsections (a)-(h) of [28 U.S.C. § 1581].

28 U.S.C. § 1581(i) (1982). Section 1581(i) is the residual jurisdiction of the Court and may only be invoked when other available avenues of jurisdiction are manifestly inadequate or it is necessary to avoid extraordinary and unjustified delays caused by requiring the exhaustion of administrative remedies. *Dennison Mfg. Co. v. United States,* 12 CIT ——, 678 F.Supp. 894, 897 (1988).

Defendant denies plaintiff has submitted evidence of an exclusion under 19 U.S.C. § 1514(a)(4), and adds that approximately 22% of the merchandise agreed to be rags is now being processed for release as a result of the "no change" liquidation of the invoiced merchandise. Customs believes the rest of the merchandise to be towels, and thus states that "approximately 88% [sic] of the subject merchandise was not invoiced (since the invoice describes only rags) and will remain under Customs' custody until the seizure proceedings are completed." *Defendant's Final Reply Memorandum,* at 3. At oral argument heard July 11, 1988 on the motion to dismiss, defendant conceded that the merchandise agreed to be rags has not yet been released.

Defendant urges the Court lacks jurisdiction because under 28 U.S.C. § 1356 (1982), district courts have original jurisdiction over seizures under any law of the United States, except admiralty and maritime actions and certain actions "commenced by" the United States before the Court of International Trade under 28 U.S.C. § 1582 (1982 & Supp. IV 1986). Section 1582 does not apply here because this action was not "commenced by" the United States. Defendant relies on *International Maven, Inc. v. McCauley,* 12 CIT ——, 678 F.Supp. 300 (1988), because the Court of International Trade found it lacked jurisdiction over a seizure of allegedly counterfeit products bearing the English Leather trademark. The goods were seized under 19 C.F.R. § 133.23a (seizure of counterfeit goods and forfeiture if imported without permission of the trademark owner), 18 U.S.C. § 545 (forfeiture of fraudulently imported merchandise), and 19 U.S.C. § 1595a(c) (permitting the seizure and forfeiture of any merchandise attempted to be introduced into this country contrary to law, other than in violation of 19 U.S.C. § 1592). The court found that because the goods were never excluded, but rather were seized from the inception of their attempted entry, there was no jurisdiction in the Court of International Trade under 28 U.S.C. § 1581(a). The court also found that was no jurisdiction under 28 U.S.C. § 1581(i) because it is settled that the Court of International Trade is not the appropriate forum to hear claims brought pursuant to 18 U.S.C. § 545. The court

stated the district court was the appropriate forum to contest Customs' seizure, emphasizing that the action's ultimate resolution involved a substantive trademark issue district courts have original jurisdiction. The *International Maven* decision accords with the Supreme Court's recent gray-market imports jurisdictional ruling in *K Mart Corp. v. Cartier, Inc.,* —— U.S. ——, 108 S.Ct. 950, 99 L.Ed.2d 151 (1988), which placed jurisdiction in the district courts over seizures of foreign-manufactured goods bearing valid trademarks that are imported without the United States trademark holder's consent. *K Mart Corp. v. Cartier, Inc.,* —— U.S. ——, 108 S.Ct. 1811, 1814, 99 L.Ed.2d 151 (1988).

An earlier decision by the same judge who decided *International Maven* provides a closer analogy to the jurisdictional facts of this case. Distinguishing an exclusion from a seizure in *R.J.F. Fabrics, Inc. v. United States,* 10 CIT ——, 651 F.Supp. 1431 (1986), the court identified a practical effect of an exclusion as to deny entry into the customs territory of the United States, thus allowing the importer to then dispose of the goods as he chooses. In the case of seizures, the court stated the government "often" takes control of the merchandise and may ultimately institute forfeiture proceedings. *Id.* at ——, 651 F.Supp. at 1436. The defendant had challenged jurisdiction because after excluding the imported merchandise, the government mailed a notice of seizure under 19 U.S.C. § 1592, explaining that seizure had been necessary to prevent the introduction of restricted merchandise, under allegedly fraudulent documents, into the commerce of the United States in an attempt to by-pass quota or visa requirements. The plaintiff then protested the exclusion of the merchandise, and Customs denied the protest. Although the court had provided a practical distinction between exclusions and seizures, the court found it clear that plaintiff had protested the exclusion of merchandise under 19 U.S.C. § 1514(a)(4) and established jurisdiction to review the protest under 28 U.S.C. § 1581(a).

The Court disagrees with defendant's assertion that *International Maven* compels dismissal of this action. First, while the goods in *International Maven* were seized from the moment of their importation, in this action the goods were excluded on June 23, 1987 and seized on June 29, 1987. Second, the underlying dispute in this action involves on the proper classification of imported merchandise under the TSUS, rather than an issue of substantive trademark law as in *International Maven.* Following *R.J.F. Fabrics,* the Court finds that it has jurisdiction under 28 U.S.C. § 1581(a) (1982).

*R.J.F.* also found jurisdiction under 28 U.S.C. § 1581(i) (1982). In refuting the government's claim that the plain language of 28 U.S.C. § 1356 placed jurisdiction with the district court, the same claim now made in this action, the court stated that

> [w]hile it is true that the wrong addressed by 19 U.S.C. § 1592(a) is attempted entry under false documents ... it is equally true that seizure pursuant to [19 U.S.C.] § 1592(c)(5) is only authorized where there is a violation of [19 U.S.C.] § 1592(a) *plus* the presence of an additional statutorily specified element; in the case, the need to prevent restricted merchandise from entering the country. Thus seizure would not have occurred unless Customs believed that [a] possible violation of a quota existed.

*R.J.F. Fabrics, Inc.,* 10 CIT at ——, 651 F.Supp. at 1435.

Having reviewed the papers, affidavits, and discovery documents in this case, the circumstances of Customs' seizure under 19 U.S.C. § 1592 (1982) show that the merchandise would not have been seized unless Customs believed that a possible quota violation existed. The resolution of this action requires a determination of whether the imported merchandise is classifiable under item 366.19, TSUS, and thus subject to quota categories 363 or 369, or classifiable under items 390.30 or 386.25, TSUS, and thus not subject to quantitative restrictions, or classifiable under item 382.25, TSUS, and subject to quantitative restrictions only under quota category 369. This is precisely the type of action that should be decided by the Court of International

Trade and to do so furthers the Congressional intent that the Court's expertise and national jurisdiction be "exclusively utilized in the resolution of conflicts and disputes arising out of the tariff and international trade laws...." H.R.Rep. No. 1235, 96th Cong., 2d Sess. 28, *reprinted in* 1980 U.S. Code Cong. & Admin.News 3729, 3739 (House Committee on the Judiciary Report on the Customs Courts Act of 1980).

Defendant alternatively moves to stay the Court proceedings until 30 days after forfeiture proceedings are complete. Defendant urges that if the merchandise forfeits to the United States, plaintiff would retain no property rights in the forfeited merchandise and thus would have no justiciable claims. *Defendant's Memorandum in Support of its Motion to Dismiss*, at 3; *Defendant's Final Reply Memorandum*, at 2–3.

At oral argument defendant acknowledged that forfeiture proceedings have not even been commenced. In *R.J.F.*, the court admonished that the specter of possible civil forfeiture or criminal proceedings in other courts may not be used to frustrate the proper exercise of jurisdiction. There is no reason to reach a different result in this action.

## Conclusion

Plaintiff has properly invoked the jurisdiction of this Court under 28 U.S.C. § 1581(a) (1982) by contesting the denial of a protest of the exclusion from entry of its merchandise. As in *R.J.F. Fabrics*, even if this exclusion were not considered protestable, jurisdiction exists under 28 U.S.C. § 1581(i)(3) and (4) (1982) because the plaintiff's cause of action arises out of the administration and enforcement of a quantitative restriction on imported goods. Defendant's motion to dismiss for lack of jurisdiction and for not stating a claim upon which relief may be granted is denied.

Defendant's motion to stay until thirty days after forfeiture proceedings are completed is denied. Those proceedings have not even been commenced.

Trial is scheduled in Detroit, Michigan at 10:00 a.m. on Wednesday, September 7, 1988.